**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA

       Plaintiff,

v.                               1:2015-cr-606

MICHAEL PAJACZKOWSKI,
       a/k/a "Paj," et al.             Hon. Analisa Torres

       Defendant.              **REDACTED**

---

## SENTENCING MEMORANDUM SUBMITTED ON BEHALF OF DEFENDANT MICHAEL PAJACZKOWSKI

---

Matthew P. Diehr, *pro hac vice*
HUSCH BLACKWELL LLP
8001 Forsyth Ave., Suite 1500
St. Louis, MO 63105
(314) 480-1500 Telephone
(314) 480-1505 Facsimile
Matthew.Diehr@huschblackwell.com

*Attorney for Defendant*
*Michael Pajaczkowski*

# TABLE OF CONTENTS

Page

I.    Preliminary Statement................................................................1

II.   The Nature and Circumstances of the Offense and History and
      Characteristics of Mr. Pajaczkowski Support a Sentence of Time Served...................2

      A.    The History and Characteristics of Mr. Pajaczkowski .....................................2

      B.    The Nature and Circumstances of the Offense ................................3

III.  A Sentence of Time Served Would Be Sufficient but not Greater than
      Necessary to Achieve the Purposes of United States Sentencing. ...............................3

      A.    Retribution..........................................................................4

      B.    Specific Deterrence ...........................................................5

      C.    General Deterrence ...........................................................5

      D.    Rehabilitation ..............................................................6

IV.   A Sentence of Time Served Would Achieve the Sentencing Goal of Avoiding
      Unwarranted Sentence Disparity among Defendants with Similar Records
      Who Have Been Found Guilty of Similar Conduct. ......................................6

      A.    The Recent Sentencing of Defendant Erdolo Eromo Warrants Particular
            Consideration. .........................................................6

      B.    In Terms of Both Culpability and Value of Cooperation, the Most Analogous
            Defendants Are Mr. Erdolo Eromo and Mr. Andrew Bachman, Both of
            Whom Received Probationary Sentences. ....................................7

V.    Mr. Pajaczkowski's Significant and Impactful Cooperation Ensures that Time
      Served is an Available Sentence in this Matter, Taking into Account the
      United States Sentencing Guidelines and Pertinent Public Policy Statements,
      and This Court Should Sentence Mr. Pajaczkowski Consistent with the
      Government's Motion to Sentence the Defendant in Light of the Factors Set
      Forth in Guidelines § 5K1.1. ................................................................8

      A.    Background and Procedural History ...............................................9

      B.    Mr. Pajaczkowski's cooperation was extremely significant, and its usefulness
            arises plainly from the fact it led to the charging and subsequent convictions
            of several individuals in the Premium SMS industry. § 5K1.1(a)(1)...........................11

C.      The nature and extent of Mr. Pajaczkowski's complete and reliable cooperation should be given great weight by the Court, as it involved an ongoing dialogue that spanned a number of years and revealed criminal aspects of the Premium SMS industry the government would not have otherwise unearthed. § 5K1.1(a)(3). ...................................................................................14

D.      Mr. Pajaczkowski was truthful, timely, and reliable in his cooperation. § 5K1.1(a)(2), (5)..................................................................................................17

**VI.    Conclusion** ...................................................................................................**17**

**CERTIFICATE OF SERVICE** .............................................................................**18**

## SENTENCING MEMORANDUM ON BEHALF OF DEFENDANT
## MICHAEL PAJACZKOWSKI

**I.      Preliminary Statement**

Mr. Michael Pajaczkowski hereby submits this sentencing memorandum in aid of sentencing, which is currently scheduled for July 25, 2023.  Mr. Pajaczkowski respectfully requests that the Court grant him a downward departure pursuant to U.S.S.G. § 5K1.1, in recognition of his extensive cooperation with the government, as well as a downward variance from the otherwise applicable sentencing guidelines range, to impose a term of time served.  This sentence of time served is supported by the Probation Office in its recent Presentence Investigation Report, Doc. 89, pg. 35, which recommends this sentence for Mr. Pajaczkowski.

In support of this request, Mr. Pajaczkowski respectfully suggests that his complete and total acceptance of responsibility for his behavior—and his true remorse and genuine efforts to rehabilitate his life—stand as particularly compelling reasons for the Court to consider a sentence of time served.  Likewise, the need to avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct cuts in favor of a sentence of time served.

Mr. Pajaczkowski's cooperation with the government likewise yielded critical results for the government in the form of (1) cooperation from other similarly culpable offenders such as Erdolo Eromo, (2) convictions at trial of more culpable offenders such as Darcy Wedd, and (3) discovery of other criminal schemes entirely leading to the guilty plea highly culpable government targets such as Eugeni Tsvetnenko.  Mr. Pajaczkowski's acceptance of responsibility was immediate and sincere and continues to this day.  He respectfully submits that a sentence of time served is sufficient, but not greater than necessary, to achieve the statutory purposes of sentencing when considering all of the applicable factors set forth in 18 U.S.C. § 3553(a).

II. **The Nature and Circumstances of the Offense and History and Characteristics of Mr. Pajaczkowski Support a Sentence of Time Served.**

The nature and circumstances of the offense, in the context of the history and characteristics of Mr. Pajaczkowski, reveal time served would be a sentence sufficient but not greater than necessary to achieve the purposes of United States sentencing. 18 U.S.C. § 3553(a)(1).

A. **The History and Characteristics of Mr. Pajaczkowski**

Mr. Pajaczkowski's history as a loving father to his two children is far more indicative of his character than is his regretful decision to engage in the conduct he did with Mobile Messenger. Mr. Pajaczkowski respectfully directs the Court to the letters in support in this regard.

As reflected in Exhibit 1, a letter in support from Mr. Pajaczkowski's brother, Mr. Pajaczkowski is viewed as a caring pillar of support for his family members, one who will be welcomed by his family when he returns to Australia. This letter describes Mr. Pajaczkowski's devotion to coaching his children's sports, his loving nature with his nieces and nephews, and his devotion to his family and acceptance of responsibility for his conduct.

Mr. Pajaczkowski's mother, Maria Beilicz, has submitted a letter in support, Exhibit 2, that aptly summarizes Mr. Pajaczkowski's character—and the circumstances he has faced the last several years—better than counsel ever could. She describes Mr. Pajaczkowski as a loving and caring son and father, a man who has been alienated from all those he loves these last several years as a result of his conduct. This letter reinforces that Mr. Pajaczkowski is a mature, responsible man with every intention of rebuilding his life and serving as a positive force for society. Mr. Pajaczkowski's son has likewise submitted a short note, attached as Exhibit 3, that supports the finding that Mr. Pajaczkowski has truly dedicated his life to his children in the time he has spent rehabilitating himself.

Exhibits 4-6 further reinforce the notion that the history and characteristics of Mr. Pajaczkowski support a sentence of time served. In Exhibit 4, family friend Kerry Smith describes a man who loves his family and lives with the burden of the tremendous remorse that he has caused

2

them pain as a result of his actions.  Exhibit 5 likewise paints a picture of a loving and caring man who helped a friend through a crisis and who is singularly focused on the well-being of his children.  And Exhibit 6 reinforces the long journey Mr. Pajaczkowski has made, where he is now the trusted employee of a landscaping business that credits his hard work and customer loyalty in part to the company's success.

Finally, Mr. Pajaczkowski has submitted his own letter for the Court's review, Exhibit 7.  Mr. Pajaczkowski certainly welcomes the opportunity speak directly to the Court and answer any questions it may have.  In the interim, Mr. Pajaczkowski wanted to humbly express his sincere contrition for his actions and a brief word about how he has rehabilitated himself the past several years.  Exhibit 7 demonstrates a man who is truly apologetic for his actions and will regret them every day of his life.  Mr. Pajaczkowski humbly and respectfully submits that these actions and the personal characteristics that they reflect cut in favor of a sentence of time served.

### B.      The Nature and Circumstances of the Offense

The nature and circumstances of the offense are discussed *infra*, Section. V.A.  Mr. Pajaczkowski does not contend that any circumstances of the offense mitigate his conduct, for instance that he did it at another's urging or the like.  Mr. Pajaczkowski takes full and complete responsibility for his conduct.

### III.   A Sentence of Time Served Would Be Sufficient but not Greater than Necessary to Achieve the Purposes of United States Sentencing.

Section 3553(a)(2) sets forth that the Court shall consider four purposes in fashioning a sentence sufficient but not greater than necessary to achieve the goals of federal criminal sentencing:  (1) retribution,    (2) general    deterrence,    (3) specific    deterrence,    and    (4) rehabilitation.  Mr. Pajaczkowski has accepted responsibility for his actions and has been humbled by these proceedings.  Addressed in turn below, he respectfully submits that the § 3553(a) factors are consistent with a sentence of time served.

### A.      Retribution

The Court should consider time served as a sentence sufficient but not greater than necessary to achieve the goals of federal sentencing.  This fact is true in part because Mr. Pajaczkowski's <u>family</u> has suffered and will continue to pay the price for his conduct.  First, Mr. Pajaczkowski will assuredly face removal from the United States for his conduct, a fact that will forever devastate Mr. Pajaczkowski because it will uproot his children from the only country they have ever known.[1]  Like many United States immigrants, Mr. Pajaczkowski's children have been raised entirely in the United States, immersed in American culture.  The agony Mr. Pajaczkowski has caused his family has been a primary concern and regret throughout his guilty plea and the cooperation process.   Secondly, Mr. Pajaczkowski's family has experienced quite a bit of hardship as a direct result of his conduct, another collateral consequence of Mr. Pajaczkowski's crime that this Court should take into consideration in assessing whether the sentencing goal of retribution has been met.  Mr. Pajaczkowski's marriage ultimately collapsed as a result of his behavior underlying this case.  Mr. Pajaczkowski has seen his daughter D.P. experience significant mental health issues that he attributes to the stress his conduct has placed on the family and to her having witnessed his arrest.  D..P's physical condition is compounded by the fact that Mr. Pajaczkowski is now severely constrained in his financial ability to obtain necessary treatment for her.  Mr. Pajaczkowski respectfully submits that the strife he has caused his family by forcing their relocation and in the other ways enumerated above will always be a terrible personal regret, and that this consequence of his criminal conviction is appropriately considered by this Court in assessing whether the United States sentencing goal of retribution has been achieved.

---

[1] Mr. Pajaczkowski's youngest child, X.P., was born in the United States and therefore is a United States citizen.

B.     **Specific Deterrence**

Similarly, the sentencing goal of specific deterrence is achieved by a term of time served. The history and characteristics of Mr. Pajaczkowski indicate that he has and will continue to make efforts to restore his reputation as a citizen and to serve as a loving father.  There is no indication he would commit the same type of offense again.  Rather, the information submitted to the Court reflects that Mr. Pajaczkowski's offense was aberrant.  In addition, Mr. Pajaczkowski will be removed from the United States following sentencing in this matter, and therefore specific deterrence is achieved by a sentence of time served for this additional reason.  Finally, every indication is that Mr. Pajaczkowski is a nonviolent man who will resume a law-abiding life marred only by the instant offense.  The Probation Office's recommendation of time served reflects this fact.

C.     **General Deterrence**

Time served would also be a sentence sufficient but not greater than necessary to achieve the sentencing goal of general deterrence. Courts have noted that imposition of financial burdens on white-collar offenders can serve the goals of retribution and general deterrence. *United States v. Adelson*, 441 F.Supp.2d 506, 514 (S.D.N.Y. 2006) (finding the Guidelines in a securities-fraud prosecution were "patently absurd on their face" due to the "'piling on' of points for which the guidelines have frequently been criticized"); *see also United States v. Gupta*, 904 F.Supp.2d 349, 354-55 (S.D.N.Y. 2012). Mr. Pajaczkowski also notes the dramatic effect that the loss amount here has on his total offense level and recommended Guidelines range.  Mr. Pajaczkowski's precipitous fall in his career prospects and the tremendous consequences he has caused his family stand as just two reasons he is a cautionary tales for others considering similar conduct. As a result, Mr. Pajaczkowski respectfully submits that the Court should consider time served as a sentence sufficient but not greater than necessary to determine whether the United States sentencing goal of general deterrence has been achieved.

D.     **Rehabilitation**

Mr. Pajaczkowski has no need for medical, vocational, or other rehabilitative treatment that would be furthered by a custodial sentence.  He fully understands the gravity of his offense and has taken measures to ensure he has a positive impact on society moving forward. Mr. Pajaczkowski underwent therapy to help him understand what led him astray.  In addition to his cooperation, Mr. Pajaczkowski has made a very sincere effort to rehabilitate his life, efforts Mr. Pajaczkowski describes in his letter to this Court and that are reflected in all the other letters in his support. Exhibits 1-7.  He respectfully submits that the sentencing goal of rehabilitation would be met by time served.

**IV.    A Sentence of Time Served Would Achieve the Sentencing Goal of Avoiding Unwarranted Sentence Disparity among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct.**

The Court may consider the sentences imposed on the other defendants in this case, including other cooperators, as it fashions Mr. Pajaczkowski's sentence to achieve the sentencing goal of avoiding unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct. *Adelson* noted that disparity in sentencing may begin with an analysis of an alleged co-conspirators' sentence. 441 F.Supp.2d at 512 (analyzing the sentence for Adelson's only co-defendant to have been sentenced at the time).  In addition, of course, the Court may consider sentences imposed on other offenders who have been found guilty of similar conduct.

**A.     The Recent Sentencing of Defendant Erdolo Eromo Warrants Particular Consideration.**

Mr. Pajaczkowski respectfully submits that the recent sentence of Erdolo Eromo by this Court warrants particular consideration, for a few reasons.  First, Mr. Eromo was approached by the government only after and with the benefit of Mr. Pajaczkowski's cooperation.  Mr. Pajaczkowski's cooperation thus led to the development of Mr. Eromo's cooperation, which in turn became necessary (both men's testimony) to convict several other offenders.

Second, Mr. Eromo is a particularly similarly situated offender to Mr. Pajaczkowski in that the two men were part of the original four Mobile Messenger executives to find themselves subject to the government's investigation—along with offenders Mr. Wedd and Mr. Thompson.  Just as Mr. Eromo had a particular role in the scheme that centered on evading detection through financial means, Mr. Pajaczkowski had a particular role that likewise centered on evading detection.  Mr. Pajaczkowski respectfully submits that Mr. Eromo's recent sentence of time served particularly demonstrates that a sentence of time served for him would achieve the sentencing goal of avoiding unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct.

**B.    In Terms of Both Culpability and Value of Cooperation, the Most Analogous Defendants Are Mr. Erdolo Eromo and Mr. Andrew Bachman, Both of Whom Received a Probationary Sentence.**

Here, Mr. Pajaczkowski wishes to draw the Court's attention to the sentence of Mr. Andrew Bachman and also to Mr. Eromo, described above.  Though Mr. Bachman represented a content provider entity (Tatto) rather than an aggregator (Mobile Messenger), Mr. Bachman's offense conduct is similar to Mr. Pajaczkowski's.  In particular, the exchange of mobile phone numbers to facilitate the initial auto-subscription scheme was between Mr. Bachman and Mr. Pajaczkowski.  Each facilitated reprehensible conduct, and each ultimately accepted responsibility and cooperated fully.

Mr. Bachman further obtained lists of mobile phone numbers to be avoided so that he and other defendants could evade detection, some of which were prepared by Mr. Pajaczkowski. Mr. Bachman took significant steps with Mr. Eromo to ensure that short codes were not traceable to the defendants by creating shell entities, analogous to certain of Mr. Pajaczkowski's acts.

Cooperation with the government is integral to the federal criminal system, and here Mr. Pajaczkowski's was extensive. His testimony at three separate trials led to the criminal convictions of Mr. Thompson at the retrial of this matter in August 2017 and the conviction of Mr. Wedd in December 2017. His cooperation led to the guilty pleas of Mr. Eromo, Mr. Assifuah, and Mr. Murad.

Mr. Bachman, too, cooperated extensively with the government.  Mr. Bachman's testimony assuredly led to the charging and conviction of the other defendants from within Tatto, Mr. Miao and Mr. Lee.  This can be likened to Mr. Pajaczkowski's cooperation as concerns the defendants from within Mobile Messenger—Mr. Wedd, Mr. Eromo, Mr. Thompson, and Mr. Murad.

Mr. Pajaczkowski would also respectfully submit that his conduct in the scheme was likewise very analogous to Mr. Erdolo Eromo's such that the two are defendants with similar records who have been found guilty of similar conduct.  Both Mr. Bachman and Mr. Eromo received probationary sentences in this matter.  Mr. Pajaczkowski respectfully submits to the Court that the probationary sentences of Mr. Bachman and Mr. Eromo therefore represent appropriate benchmarks for the Court to achieve the sentencing goal of avoiding unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct, as recommended by the Probation Office.

**V.    Mr. Pajaczkowski's Extraordinary Cooperation Ensures that Time Served is an Available Sentence in this Matter, Taking into Account the United States Sentencing Guidelines and Pertinent Public Policy Statements, and This Court Should Grant the Government's Motion to Sentence the Defendant in Light of the Factors Set Forth in Guidelines § 5K1.1.**

Section 5K1.1 of the Guidelines explicitly notes that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."  As such, Mr. Pajaczkowski's cooperation with the government ensures that time served is an available sentence in this matter if the Court grants the government's motion.  Mr. Pajaczkowski respectfully submits that the factors urged by § 5K1.1 cut in favor of a probationary sentence here: (1) the cooperation's significance and usefulness; (2) its truthfulness, completeness, and reliability; (3) the nature and extent of Mr. Pajaczkowski's assistance; (4) the risk of cooperating; and (5) the cooperation's timeliness.

### A.      Background and Procedural History

On September 2, 2015, Mr. Pajaczkowski appeared before this Honorable Court and pled guilty to four counts of a criminal information ("the Information") filed in the Southern District of New York. Counts One and Three of the Information charged Mr. Pajaczkowski with two conspiracies in violation of 18 U.S.C. § 1349, each of which counts carry a maximum penalty of twenty years imprisonment.  Counts Two and Four of the Information charged Mr. Pajaczkowski with two conspiracies to launder the proceeds of the conspiracies charged in Counts One and Three. These counts carry the same maximum penalty.

In addition to pleading guilty, Mr. Pajaczkowski prepared a detailed allocution as to his conduct underlying each count, stating to the Court his deep regret for his conduct.  Honorable Katherine Forrest remarked to counsel afterward that she was impressed with the thoroughness of the allocution. As the government would learn, though, this was the tip of the iceberg, and Mr. Pajaczkowski's careful preparation for all proffer sessions and vivid recollection of the PSMS industry would come to characterize his cooperation.  Ultimately, the government selected Mr. Pajaczkowski as a key face and voice in in all three trials to patiently explain to the jury the PSMS industry and those within it who improperly gained at the expense of consumers.[2]  At each trial, Mr. Pajaczkowski explained the roles and responsibilities of carriers, aggregators, content providers,

---

[2] Mr. Pajaczkowski testified first during the four week jury trial spanning April 2017 before Hon. Katherine Forrest. This trial resulted in a mistrial.

In the August 2017 retrial of this matter, Mr. Pajaczkowski again testified faithfully and in a fashion that connected with the jury and allowed it to understand the abuses that required the criminal conviction of Darcy Wedd and Fraser Thompson. Although Mr. Pajaczkowski's valuable cooperation and eventual testimony should be credited by this Court regardless of the outcome at trial, it is notable that the retrial in this matter led to the conviction of offender Mr. Thompson.  In this August retrial, the jury again deadlocked as to Mr. Wedd, the former CEO of Mobile Messenger.

At a third trial conducted in December 2017, Mr. Pajaczkowski again served as the government's very first witness. Mr. Pajaczkowski's testimony contributed to the conviction of Mr. Wedd, who was likely regarded by the government as the single most culpable offender.

auditors, and all other parties that contributed to the rise and eventual fall of the Premium SMS industry. He did so capably—often covering quite dense subject matter—and with a steady demeanor. He was the first witness from Mobile Messenger in each trial, and the first and most compelling to provide the jury with direct visibility into the crimes of Mr. Wedd and Mr. Thompson.

Following his guilty plea, Mr. Pajaczkowski provided detailed information to the government on the following occasions.

| Instances Where Mr. Pajaczkowski Proferred to Federal Authorities | |
|---|---|
| **Date / Location** | **Summary** |
| June 11, 2015 – New York, New York | Introduction and thorough explanation of his role within Mobile Messenger. |
| June 23, 2015 – Dallas, Texas / New York, New York | Additional explanation of his visibility into different sectors of the PSMS industry and wrongdoing he could identify. |
| July 27, 2015 – Dallas, Texas / New York, New York<br><br>August 26, 2015 – Dallas, Texas / New York, New York | Additional explanation of criminal conduct of Darcy Wedd and Erdolo Eromo, both charged by indictment in September 2015. |
| March 15, 2016 – Dallas, Texas / New York, New York | Additional explanation of criminal conduct of Fraser Thompson, Eugeni Tsvetnenko, and Francis Assifuah, charged by complaint / superseding indictment in April / July 2016. |
| October 28, 2016 – Dallas, Texas / New York, New York | Additional explanation of his visibility into different sectors of the PSMS industry and wrongdoing he could identify. |
| March 2-3, 2017 – New York, New York | Introduction to trial attorney Rich Cooper and commencement of trial preparation. |
| March 15-17, 2017 – New York, New York | Travel to New York to continue trial preparation. |
| March 27-29, 2017 – New York, New York | Final preparation to serve as crucial government witness. |
| July 12, 2017 – Dallas, Texas / New York, New York | First preparation session following April mistrial, in preparation for August retrial. |
| July 28, 2017 – Dallas, Texas / New York, New York | Additional preparation session in preparation for August retrial. |
| August 10-11, 2017 – New York, New York | Final preparation to serve as crucial government witness for August retrial. |
| November 7, 2017 – Dallas, Texas / New York, New York | First preparation session following August mistrial, in preparation for December retrial. |

| Instances Where Mr. Pajaczkowski Proferred to Federal Authorities | |
|---|---|
| **Date / Location** | **Summary** |
| November 28, 2017 – Dallas, Texas / New York, New York | Second preparation session following August mistrial, in preparation for December retrial. |
| January 5, 2018 – Dallas, Texas / New York, New York | First preparation session in preparation for January retrial of Christopher Goff and Yongchao Liu. |

In addition to the charging documents referenced above that resulted in large part from Mr. Pajaczkowski's cooperation, several guilty pleas were entered prior to the April 2017 trial in this matter, most notably those of Erdolo Eromo and Francis Assifuah.

Mr. Pajaczkowski's sentencing now occurs nearly eight years after his September 2015 guilty plea, and after service as a trial witness at three separate trials, so that he was afforded adequate opportunity to demonstrate his substantial assistance to this Court.

**B.     Mr. Pajaczkowski's cooperation was extremely significant, and its usefulness arises plainly from the fact it led to the charging and subsequent convictions of several individuals in the Premium SMS industry. § 5K1.1(a)(1).**

Mr. Pajaczkowski's cooperation culminated in charges issued, and convictions obtained, against several individuals in the Premium SMS text industry.  Many of these individuals could not have been brought to justice without information provided by Mr. Pajaczkowski, making him a very significant cooperator in unearthing criminal conduct from the defunct Premium SMS industry. As a result, this Court should consider Mr. Pajaczkowski's cooperation to have been extremely significant and demonstrably useful under § 5K.1(a)(1).  This is reflected in the government's motion pursuant to § 5K.1(a)(1) and reinforced by the Probation Office's recommendation of time served.

On September 9, 2015, Darcy Wedd and Erdolo Eromo, executives at the aggregator Mobile Messenger ("MM") that had employed Mr. Pajaczkowski, were charged in a three count indictment along with Yong Jason Lee, Michael Pearse, Yongchao Liu, and Christopher Goff.

Mr. Pajaczkowski's knowledge led directly to the charging of both Mr. Wedd and Mr. Eromo, both of whom were considered two of the most culpable offenders in the PSMS industry.

On April 25, 2016, Francis Assifuah was charged in a two count complaint.  While Mr. Assifuah, so far as Mr. Pajaczkowski is aware, was not considered one of the government's primary targets in its investigation, his charging underscores that Mr. Pajaczkowski's knowledge of the PSMS industry led the government in new and important directions in its investigation.

The addition of Mr. Assifuah as a defendant also led directly to the guilty plea of Mr. Eromo, because the chief crime of Mr. Assifuah was an instance of auto-subscription where Mr. Assifuah could directly implicate Mr. Eromo.  The tandem of Mr. Pajaczkowski and Mr. Eromo would thereafter serve as the chief witnesses against Mr. Wedd and Mr. Thompson.  Stated differently, it is therefore notable that Mr. Eromo's cooperation can be traced to Mr. Pajaczkowski through his ability to implicate Mr. Assifuah.

On July 22, 2016, the grand jury returned a superseding indictment against previous defendants Darcy Wedd, Christopher Goff, and others.  Critically, the superseding indictment also charged Fraser Thompson, Eugeni Tsvetnenko, and Francis Assifuah.

Below, Mr. Pajaczkowski summarizes all defendants who were charged as a result of his cooperation.

| Individuals Whose Charges and Convictions Are Directly Attributable to Mr. Pajaczkowski | |
|---|---|
| **Individual / Title** | **Resolution** |
| Darcy Wedd | Mr. Wedd was convicted of two felony counts at the second retrial in December 2017.  Mr. Wedd was sentenced to 120 months' imprisonment, reflecting his status as arguably the most culpable offender in the PSMS industry.  Mr. Pajaczkowski was a key witness at this trial. |
| Eugeni Tsvetnenko | Ms. Tsvetnenko closely rivals Mr. Wedd as the most culpable offender.  Charged in the July 22, 2016 superseding |

| | |
|---|---|
| | indictment, Mr. Tsvetnenko was sentenced to 98 months' imprisonment.  Mr. Tsvetnenko's crimes were unearthed by Mr. Pajaczkowski directly for the first time. |
| Fraser Thompson | Mr. Thompson was convicted of two felony counts at the first retrial in August 2017.  Mr. Thompson was the second most culpable offender from within Mobile Messenger, the company that employed Mr. Pajaczkowski, and was sentenced to a term of imprisonment of 60 months.  Mr. Pajaczkowski was a key witness at this trial. |
| Francis Assifuah | Mr. Assifuah pled guilty to two felony counts and was sentenced to a term of imprisonment of 33 months.  It is unclear whether Mr. Assifuah would have cooperated absent Mr. Pajaczkowski's cooperation. |
| Erdolo Eromo | Mr. Eromo pled guilty to four felony counts and was recently sentenced to time served.  It is unclear whether Mr. Eromo would have cooperated absent Mr. Pajaczkowski's cooperation. |
| Jonathan Murad | Mr. Murad pled guilty to two felony counts and received a probationary sentence. |

In the July 2016 superseding indictment, Mr. Eromo is clearly identified as a cooperating witness. In other words, Mr. Pajaczkowski's early and extensive cooperation had a cascading effect throughout the government's investigation and prosecution of the PSMS industry and its detrimental effects on consumers.  The significance of Mr. Pajaczkowski's testimony at all three trials cannot be overstated, as it led directly to the convictions of Mr. Wedd and Mr. Thompson. *See infra*, Section V.C. Mr. Pajaczkowski's early and extensive cooperation also had a cascading effect that generally enhanced the government's ability to effectively try Mr. Wedd and Mr. Thompson in the first place, as the information he provided led not only to the charging of these individuals, but the eventual cooperation of others implicated by Mr. Pajaczkowsi enhanced the effectiveness of Mr. Pajaczkowski's cooperation and corroborated his trial testimony.

As reflected in the government's § 5K1.1 motion, this Court should consider Mr. Pajaczkowski's cooperation to have been extremely significant and useful under § 5K.1(a)(1).

> **C.** **The nature and extent of Mr. Pajaczkowski's complete and reliable cooperation should be given great weight by the Court,** as it involved an ongoing dialogue that spanned nearly eight years and revealed criminal aspects of the PSMS industry the government would not have otherwise unearthed. § 5K1.1(a)(3).

Mr. Pajaczkowski cooperated completely and reliably from the outset. He met with the government on numerous occasions.  The government's § 5K1.1 motion bears this out, as Mr. Pajaczkowski strove to cooperate whenever asked, traveling to New York on multiple occasions—including three separate trials—and conversing by videoconference on many more.

In addition, because of the mistrial that resulted in the April 2017 trial and the failure to convict Mr. Wedd in the August 2017 retrial, the nature of Mr. Pajaczkowski's cooperation involved testimony at three separate trials, each involving travel to New York City and long periods of time separated from his children. In total, Mr. Pajaczkowski spent over a week on the witness stand.

In addition to the time and expense involved, the nature of Mr. Pajaczkowski's cooperation is such that he exposed criminal conduct that the government simply would not have otherwise unearthed. This reflects Mr. Pajaczkowski's sincerity in the reform of his life and efforts to rehabilitate himself and put this regretful chapter of his life behind him.

While Hon. Judge Katherine Forrest presided over these trials and therefore only she had an opportunity to directly observe Mr. Pajaczkowski's trial testimony, this Court remains well-positioned to consider the nature and extent of his testimony—its value, in other words—in securing the convictions of Mr. Wedd and Mr. Thompson.  In a case built largely on the testimony of cooperators whose veracity the jury may have had reason to doubt, Mr. Pajaczkowski's candor was critical in securing the convictions of Mr. Wedd and Mr. Thompson, and his contributions that led to the cooperation of others such as Mr. Eromo were invaluable.

Mr. Pajaczkowski provided straightforward testimony as to his conduct in three separate auto-subscription schemes: (1) Tatto, (2) Mr. Assifuah, and (3) Mr. Tsvetnenko.

With regard to Tatto, the government had witnesses within that content provider company, but Mr. Pajaczkowski was able to corroborate and enhance testimony that Tatto was engaged in auto-subscription. He testified to the direct involvement and financial gain of Mr. Wedd in this scheme, providing clear recollection of the conversations that precipitated this auto-subscription. Mr. Pajaczkowski was, without a doubt, the key witness as to Mr. Wedd's participation in the Tatto auto-subscription conspiracy.

As to auto-subscription with Mr. Assifuah, Mr. Pajaczkowski's testimony provided a layer of subtlety that aided the government in securing convictions. While neither Mr. Wedd nor Mr. Thompson were involved in this auto-subscription scheme, Mr. Pajaczkowski's testimony in this regard demonstrated to the jury that he had been completely truthful to the government—in other words, Mr. Pajaczkowski truthfully implicated himself in a crime that did not involve either defendant on trial. This undercut the defense argument that Mr. Pajaczkowski sought only to convict Mr. Wedd and Mr. Thompson, whether for personal reasons or to curry favor with the government. Stated differently, Mr. Pajaczkowski's testimony relative to this auto-subscription scheme demonstrated that Mr. Pajaczkowski was not an opportunist, but rather was someone who was testifying truthfully. Because Mr. Eromo was directly involved in this conspiracy, as indicated, Mr. Pajaczkowski's information also led directly to Mr. Eromo's guilty plea.

Lastly, as to Mr. Tsvetnenko, Mr. Pajaczkowski's testimony provided the jury the first evidence against Mr. Thompson—literally identifying Mr. Thompson's photograph for the government's chalkboard exhibit in the April trial showing the layers of the conspiracies at issue. Because Mr. Thompson had not been involved in the other charged auto-subscription with Tatto, Mr. Pajaczkowski's testimony was therefore vital to securing Mr. Thompson's conviction.

Critically, Mr. Pajaczkowski identified and described the payment structures the four men had devised to split the proceeds of the Tsvetnenko conspiracy. Moreover, because Mr. Pajaczkowski's

information led directly to Mr. Eromo's guilty plea in this regard, the Court may properly consider both men's testimony regarding the Tsvetnenko conspiracy as it considers the nature and extent of Mr. Pajaczkowski's cooperation with the government.   Mr. Eromo not only corroborated Mr. Pajaczkowski, he was able to testify to additional acts of Mr. Thompson and Mr. Wedd—for instance, Mr. Wedd's signature approval of Tsvetnenko's shell companies to achieve auto-subscription.  In the April trial, Mr. Pajaczkowski testified on a number of subjects that enhanced the jury's understanding as to what, exactly, the defendants had done. For instance, his explanation of the PIN and WELCOME messages was straightforward testimony to which the jurors could relate—for instance, that the receipt of a welcoming message could not possibly occur prior to having entered one's PIN, absent fraud. Mr. Pajaczkowski's testimony describing the auto-subscription of Verizon employee Susan Marion and the fallout within Mobile Messenger rang particularly true and clearly demonstrated Mr. Wedd's involvement in the scheme.  Likewise, Mr. Pajaczkowski's testimony that Mr. Wedd asked him to go to prison for a sum of money was critical for the jury to understand the defendants' state of mind.  Finally, Mr. Pajaczkowski's direct receipt of funds from auto-subscription and transfer to Mr. Wedd cannot be overstated, as it plainly demonstrated Mr. Wedd's fraud.

As indicated, in the August retrial of this matter, Mr. Pajaczkowski's testimony was, if anything, more valuable to the government than in the initial trial.  Selected as the very first government witness, Mr. Pajaczkowski was tapped to explain the PSMS industry as a whole, the different corporate entities and their relationships, and how these entities and certain individuals abused the trust of consumers for their own personal gain.  Mr. Pajaczkowski testified four days in all at the retrial, and laid the foundation for bringing Mr. Thompson to justice.  Finally, Mr. Pajaczkowski's testimony at the third trial, the December retrial, directly contributed to the conviction of Mr. Wedd, one of the most culpable offenders from the PSMS industry.  Mr. Pajaczkowski's trial testimony at all three trials formed the lynchpin of the government's case, particularly when considered along with testimony

from other cooperators who likely would not have pled guilty absent information previously provided by Mr. Pajaczkowski.   As a result, this Court should consider the nature and extent of Mr. Pajaczkowski's cooperation to cut strongly in favor of a probationary sentence. § 5K.1(a)(3).  This is reflected in the government's motion pursuant to § 5K.1(a)(1) and reinforced by the Probation Office's recommendation of time served.

> ### D.   Mr. Pajaczkowski was truthful, timely, and reliable in his cooperation. § 5K1.1(a)(2), (5).

From the very moment Mr. Pajaczkowski was arrested in this matter, he indicated his desire to cooperate in putting his conduct behind him and taking responsibility.   As indicated, this was indicative of a man who has accepted responsibility for his conduct and who feels genuine remorse. Stated differently, he did not need to hear the evidence against him, assess his likelihood of conviction, or engage in any other delay tactics.  Mr. Pajaczkowski's immediate decision to accept responsibility saved the government valuable prosecutorial resources.

Mr. Pajaczkowski's honesty led to his charging with two additional felonies, each punishable by twenty years' imprisonment.   Counts three and four of his criminal information charged conspiracies to violate 18 U.S.C. § 1349 and 1956(h), both related to facilitating deceptive marketing practices with the same end goal as auto-subscription—charging consumers for text message services they had not truly authorized—and creating and using his shell corporation to conceal the nature of the proceeds, in violation of the federal wire fraud and anti-money laundering laws. Mr. Pajaczkowski's truthfulness therefore led to a maximum sentence of eighty years, a daunting prospect for any individual to contemplate and describe to his then-wife and children.  Notably, these counts related to deceptive marketing were not ultimately taken to trial against Mr. Wedd or Mr. Thompson, meaning Mr. Pajaczkowski's truthful cooperation doubled his maximum exposure.

There is absolutely no reason to doubt the truth of Mr. Pajaczkowski's testimony and cooperation with the government, and the government's § 5K1.1 motion aptly demonstrates this.

Reliability as a cooperator and a witness is also a hallmark of Mr. Pajaczkowski's service to the government in this matter. He never declined a request for a proffer session, and offered to undertake significant document review in an effort to assist the government at trial. He reliably attended all videoconference proffer sessions, and he flew to New York City on all the occasions documented.

The government also called on Mr. Pajaczkowski to testify at the retrial of Christopher Goff and Yongchao Liu in January of 2018. Though Mr. Pajaczkowski had no contemporaneous knowledge of wrongdoing on the part of either of these defendants, he made himself available as always. The fact that Mr. Pajaczkowski was asked to testify at this retrial demonstrates his truthfulness and credibility with the jury, his uncanny ability to explain dense subject matter in a relatable way, and his reliability as a cooperator.

Mr. Pajaczkowski's truthful, timely, and reliable cooperation culminated in his trial testimony at three separate trials, and he respectfully suggests that this Court should accord this reliable cooperation great weight and consider a probationary sentence in this matter. § 5K.1(a)(2), (5).

## VI.    Conclusion

Mr. Pajaczkowski is aware this case represents a significant failure on his part, and he takes full responsibility for his actions. He lives with the shame associated with his conduct each day.

In this matter, Mr. Pajaczkowski's service as a valuable, reliable, and truthful government cooperating witness with the government warrants this Court's attention. This cooperation was particularly impactful, as it led to the discovery and apprehension of new conspirators, it compelled the cooperation of other vital witnesses, and it helped secure the convictions of highly culpable offenders. This is reflected in the government's motion pursuant to § 5K.1(a)(1) and reinforced by the Probation Office's recommendation of time served.

Mr. Pajaczkowski submits that the probationary sentences of other offenders, particularly Mr. Bachman and Mr. Eromo, represent useful benchmarks for the Court to achieve the sentencing goal

of avoiding unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct.  Both received time served, and Mr. Pajaczkowski humbly and respectfully requests this same sentence from the Court.

Mr. Pajaczkowski and his counsel respectfully submit that the § 3553(a) factors are consistent with a sentence of time served, and as a result this is the sentence he respectfully requests that this Court consider as a sentence sufficient but not greater than necessary to achieve all goals of federal sentencing.

**WHEREFORE** Defendant Michael Pajaczkowski respectfully requests this Court to consider all of the matters presented herein and impose a sentence of time served.

Respectfully submitted,

*/s/Matthew P. Diehr*
Matthew P. Diehr, *pro hac vice*
HUSCH BLACKWELL LLP
8001 Forsyth Ave., Suite 1500
St. Louis, MO 63105
(314) 480-1500 Telephone
(314) 480-1505 Facsimile
Matthew.Diehr@huschblackwell.com
*Attorney for Defendant*
*Michael Pajaczkowski*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 11th day of July, 2023, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all attorneys of record.

*/s/Matthew P. Diehr*
Matthew P. Diehr, *pro hac vice*
*Attorney for Defendant*
*Michael Pajaczkowski*